**UNITED STATES of America, Plaintiff,**

**v.**

**John FLOYD and Charles Roseborough,
Defendants.**

**Crim. No. 5–81687.**

United States District Court,
E. D. Michigan, S. D.

Sept. 10, 1976.

Peter M. Rosen, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Philip Gillis, George Lee, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

KEITH, Chief Judge.

This matter is before the Court on defendants' Motion to Suppress Evidence on the ground that approximately 468 grams of heroin, seized on or about October 2, 1975, was seized against defendants' will and without a search warrant. An evidentiary hearing was held on this matter to determine the relevant facts.

On October 2, 1975, at approximately 7:40 P.M., Federal Agent Paul J. Markonni was on duty at Detroit Metropolitan Airport, observing the arrival of American Airlines flight 96 from Los Angeles. Agent Markonni testified that along with Agent Tom Anderson, he was observing this particular flight as a matter of general practice and that on the evening in question, he had no specific information concerning any person on the flight. As he watched the passengers deplaning, Agent Markonni testified that his attention focused on two passengers, because they exhibited certain characteristics that are part of a drug courier profile. Agent Markonni testified that the drug courier profile is not so much a profile as a "number of deviant characteristics," characteristics that persons not transporting narcotics would not have. The profile includes such factors as passengers taking direct flights to and from specified cities, traveling without baggage, traveling under an assumed name, furnishing false identification to airline personnel when asked for a telephone contact, staying in their destination city for very short periods of time, and exhibiting nervous mannerisms once they arrive in Detroit, often in an attempt to conceal the fact that they are traveling with someone else or that someone may be waiting for them. (Tr. 6–7)

On the basis of the composite just described, Agent Markonni testified that the

defendants, Floyd and Roseborough, caught his eye. While the defendants were walking towards the baggage claim area, Agent Markonni noticed that although they were walking separately, Mr. Roseborough appeared to be keeping up with Mr. Floyd and a young lady who had greeted Mr. Floyd upon his arrival. When questioned at the evidentiary hearing by defense counsel, Agent Markonni testified that his attention focused on the two defendants because "Mr. Roseborough appeared to be keeping an eye on Mr. Floyd and the young lady," (Tr. 20), without any overt public acknowledgment of their acquaintance, and because each defendant was carrying a clothes bag with only a few hangers visible. This second characteristic was the basis for arousing the agent's suspicion because "people traveling from California generally carry at least one suitcase." (Tr. 20)

Continuing his surveillance of the defendants, the agent observed both Mr. Floyd and Mr. Roseborough pass through the baggage claim area without claiming any luggage. Mr. Floyd and his companion then exited the terminal turning right. Mr. Roseborough followed shortly behind. The agent then testified that he observed the defendant Floyd walk up to a 1976 (sic) Cadillac Seville which was parked at the far end of the American Airlines baggage claim area. As Mr. Floyd and his female companion approached the vehicle, the agent saw Mr. Roseborough walk up to the same car, open the rear door, and start to get in. The agent then approached Mr. Roseborough and, after identifying himself, asked Mr. Roseborough for some identification. At this point, Mr. Floyd walked around to the rear of the vehicle and asked what was going on. Agent Markonni testified that he told the defendants that he was suspicious of their behavior, because they appeared not to want anyone to know they were traveling together. When the agent asked Mr. Floyd to step up to the curb where the

agent was standing, Mr. Floyd denied knowing Mr. Roseborough. Mr. Floyd, according to Agent Markonni's testimony, then got into the car and Mr. Floyd and his companion drove off.

Agent Markonni then conducted a "quick frisk search" of Mr. Roseborough, whereupon he felt a large bulge on each side of Mr. Roseborough's waist under his clothing. (Tr. 14) At this point, the agent testified that he requested that Mr. Roseborough accompany him, and they walked to a first aid room in the South Terminal. Agent Markonni testified that he orally advised Mr. Roseborough of his constitutional rights against self-incrimination and then asked Mr. Roseborough whether he was carrying any narcotics on his person. Mr. Roseborough made no response, although the agent testified that Mr. Roseborough appeared to be nervous.

When they arrived at the first aid room, Agent Markonni conducted a more thorough search of defendant Roseborough and discovered approximately one pound of heroin in two bags which had been concealed under Mr. Roseborough's clothing at hip level. According to the testimony of the agent, it was not until this point that the agent placed Mr. Roseborough under arrest.

It is the defendants' position that the search (i. e., the frisk as well as the more thorough search in the first aid room) of defendant Roseborough was without probable cause and was in violation of defendants' rights [1] under the Fourth Amendment to the United States Constitution. It is the government's position that the search of defendant Roseborough was conducted within one of the lawful exceptions to the warrant requirement of the Fourth Amendment and was, therefore, both reasonable and legal.

■ Searches conducted without a warrant are *per se* unreasonable under the Fourth Amendment, except in a "few spe-

---

1. The government has not challenged the standing of either defendant, and the Court will treat the motion as having been brought on behalf of both defendants. Unlike the situation which was before the Sixth Circuit in *United*

*States v. Hodge et al.,* 539 F.2d 898, 1976, defendant Floyd has been charged with an offense that includes, as an essential element of the offense, possession of the seized evidence at the time of the contested search and seizure.

cifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). It is the opinion of this Court that the government has failed to establish that the search of defendant Roseborough falls within any of the exceptions to the warrant requirement. Specifically, the Court finds that the initial stop of the defendant was illegal because it was not based upon a reasonable suspicion and because, in frisking the defendant, the agent exceeded the permissible scope of the stop. The Court additionally finds that the evidence in this case must be suppressed because the search which led to the discovery of the heroin was not based upon probable cause.

■ The government first contends that when Agent Markonni initially detained defendant Roseborough, he was making an "investigative stop" based upon a "founded suspicion," on the authority of *United States v. Van Lewis,* 409 F.Supp. 535, 544 (E.D.Mich. 1976), and *United States v. Richards,* 500 F.2d 1025, 1028 (9th Cir. 1974). In justifying the stop of defendant Roseborough, the Government argues that the defendants exhibited characteristics of a drug courier profile and, therefore, their detention was lawful. For the Court to accept the government's argument that the defendant's detention can be justified on less than probable cause, two things must be true. The stop of defendant Roseborough must have been a limited intrusion for the purposes of investigation, and the stop must have been reasonable. *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

In *United States v. Brignoni-Ponce, supra,* the Supreme Court elaborated on the doctrine which the Court first laid down in

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry,* the Court held that a police officer may, "in appropriate circumstances" and in an "appropriate manner" approach a person for the purpose of making an investigatory stop even though there is no probable cause to make an arrest. *Terry v. Ohio, supra,* at 22, 88 S.Ct. 1868. Starting with the appropriate circumstances test of *Terry* that allows a properly limited "search" or "seizure" on facts that do not constitute probable cause, the Court in *Brignoni-Ponce* emphasized, in extending the *Terry* rationale to the facts before it, that the agents conducting a border search must observe the same constitutional safeguards as if their authority did not come from the Immigration and Nationality Act. The Court held that a roving patrol may not stop a vehicle in an area near the United States-Mexican border and question its occupants when the only ground for suspicion is that the occupants appear to be of Mexican ancestry. To the contrary, the Court held that because of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, an officer, may in fact stop a particular vehicle, but only when the officer, on the basis of his observations, has a reasonable suspicion that the particular vehicle contains aliens who are illegally in the country.[2]

■ In determining whether the circumstances underlying the stop in the instant case were reasonable, this Court must weigh the right of the traveling public to be free from uncontrolled search and seizure against the needs of law enforcement to regulate the flow of drugs into the Detroit area. Reasonableness must be tested against the need to search. *United States*

---

**2.** The roving patrol stop in *Brignoni-Ponce* was upheld as a valid method of protecting the public and preventing crime only so long as the stop and inquiry were reasonably related in scope to the justification for their initiation. See, *Terry v. Ohio, supra,* at 29, 88 S.Ct. 1868. The first question before the Court, however, was whether the limited questioning involved in the roving-patrol stops evolved from a rea-

sonable suspicion. See, *United States v. Mico Rogers,* Cr. No. 76–80162 (E.D.Mich. July 15, 1976), at 12, for an excellent discussion on why the most recent exposition by the United States Supreme Court in *United States v. Martinez-Fuerte,* —— U.S. ——, 96 S.Ct. 3074, 49 L.Ed.2d —— (1976), does not diminish the importance of the reasonable suspicion requirement of *Brignoni-Ponce.*

*v. Van Lewis, supra.*[3] Where the governmental interest at stake is great or the public danger is grave, reasonableness within the meaning of the Fourth Amendment may require less factual justification. See, *United States v. Van Lewis, supra,* at 542, citing A. Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn.L.Rev. 349, 390–92 (1974). On the other hand, where the Court perceives no grave danger nor fundamental public interest at stake in routine enforcement of the drug laws, the government's rights must be tested against the Constitution's firmest protections of the individual against such exercises of official power.

▮ Testing "reasonableness against the need to search," the Court finds that the characteristics which caused Agent Markonni to focus his attention on the defendants do not amount to a sufficiently articulable suspicion to justify even a limited identification stop. *United States v. Mico Rachelle Rogers,* Cr. No. 6–80162 (E.D.Mich. July 15, 1976), at 13. The Court is not persuaded by the government's argument that the "drug courier profile" establishes the reasonableness of defendant Roseborough's detention.

The drug courier profile was developed by the Drug Enforcement Administration (DEA) in an effort to stem the flow of narcotics traffic at the Detroit Metropolitan Airport. See *United States v. Rogers, supra, United States v. Van Lewis, supra.* According to the testimony of Agent Markonni (Tr. 5–9), the drug enforcement operation at Metropolitan Airport involves routine surveillance of nonstop direct flights from Los Angeles to Detroit which, in the agent's experience, are often utilized by narcotics couriers. The couriers are then identified by means of the drug courier profile which Agent Markonni described as a composite of "deviant characteristics"

which are unique to persons transporting narcotics. (Tr. 6)

According to Agent Markonni's testimony, the defendants in the instant case were stopped on the basis of three factors: (1) That they appeared to be traveling together without, in the subjective opinion of Agent Markonni, wanting to create that impression; (2) They appeared nervous in the estimation of Agent Markonni; and (3) They were arriving from Los Angeles with an allegedly small amount of luggage for a trip of that distance. However, Agent Markonni admitted in his testimony that it is not necessarily unusual for a passenger to carry only a garment bag, or that the defendant's apparent nervousness was necessarily a sign of suspicious behavior rather than a result of either an innate personality syndrome, or a disorientation from a fear of flying or from having disembarked at a strange airport. Moreover, the agent had not checked to determine how long the defendants had stayed in Los Angeles to be able to say that the amount of baggage was suspicious.

▮ Accordingly, the Court, after balancing the competing interests of drug law enforcement and the right of the individual to be left alone, holds that a stop of a person is not reasonable, and is, therefore, illegal under the Fourth Amendment, where the stop is based simply on the fact that such person possesses certain otherwise innocent characteristics, despite the fact that such characteristics may be part of an alleged "drug courier profile."

Having reached the question whether Agent Markonni had a founded suspicion on which to stop Roseborough and having determined, in the negative, that the circumstances underlying the stop were neither appropriate nor compelling, the Court further finds that the initial stop and search of Roseborough was also illegal because it ex-

---

3. See also *United States v. Skipwith,* 482 F.2d 1272 (5th Cir. 1973), wherein the Court observed:

"... Reasonableness requires that the courts must weigh more than the necessity of the search in terms of possible harm to the public. The equation must also take into account the likelihood that the search procedure will be effective in averting the potential harm. On the opposite balance, we must evaluate the degree and nature of intrusion into the privacy of the person and effects of the citizen which the search entails," at 1275.

ceeded its permissible scope within the meaning of *Terry v. Ohio, supra.*

■ In *Terry,* the Court stated that a police officer making a reasonable investigatory stop should be allowed to protect himself from an armed and dangerous suspect. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," that officer may conduct a limited protective search for concealed weapons. 392 U.S., at 24, 88 S.Ct. at 1881. So long as the detention is reasonable and so long as the officer has reason to believe that the suspect is armed and dangerous, then the officer may conduct a weapons search limited in scope to this protective purpose. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

■ The Court finds that the search of Roseborough, after he was stopped, was not motivated by the only goal which might conceivably have justified its inception, the protection of the officer by disarming a potentially dangerous person. *Sibron v. N. Y.,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

As the Court explained in *Sibron v. N. Y., supra,* at 64, 88 S.Ct. at 1903:

"The police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries. Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of a self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous."

Agent Markonni's testimony reveals no facts from which he could reasonably infer that defendant Roseborough was armed

and dangerous. The fact that the defendant allegedly matched the drug courier profile may, at the very most and in conjunction with "appropriate circumstances" not found in this case, have given the agent a basis for stopping and questioning Roseborough as part of a field investigation, but it in no way justified even a limited pat down for weapons. The Court finds that the drug courier profile, by itself, provides no justification for an officer placing the hand of the law on the person of an individual whom the officer suspects is trafficking in narcotics, unless the officer can furnish additional facts to support a reasonable inference that the suspect is armed and dangerous.

■ Having found that the initial detention of Roseborough was unreasonable both in its genesis as well as its execution, the Court now turns to the remaining question regarding the more thorough search of Roseborough in the first aid room. Even if this Court were to assume, *arguendo,* that the initial detention of defendant Roseborough was reasonable, the Court would still be compelled to suppress the evidence in this case because the subsequent search which led to the discovery of the heroin was without probable cause. Except for the protection of the officer, the search after a reasonable investigative stop must be based on probable cause. *United States v. Van Lewis, supra.* Even as a search incident to an arrest,[4] the intrusion must be founded upon probable cause to believe that a crime has been committed and that the person being detained committed it. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

■ The Court finds that the drug courier profile is itself insufficient to establish probable cause. "Unless the agents have more indicia of criminal activity than that indicated by their observation of the profile factors made public in the record, probable

---

4. The government concedes that defendant Roseborough was under arrest from the time that the agent patted the defendant down. See government's brief in answer to Motion to Suppress, p. 7. The government claims, however, that the subsequent search in the first aid room which lead to the discovery of the heroin was valid as incident to a lawful arrest. The question, therefore, is still whether there was probable cause to arrest.

**730**

cause will be lacking." *United States v. Van Lewis, supra,* at 543. For the search of defendant in the first aid room to yield admissible evidence, therefore, the government must show that in arresting Roseborough the agent relied on more than an abstract profile. This the government attempts to do by arguing that the bulges which the agent felt on each side of defendant Roseborough's waist, while not in the shape of a weapon, were corroborative of the agent's suspicions that the defendant was carrying narcotics. In addition, the government argues that the flight of Mr. Floyd, and the evasive action of Roseborough immediately preceding the frisk, provided "strong indicia of mens rea" when coupled with their initial "furtive actions" in the airport terminal. This Court disagrees.

 The Court finds that the bulges which Agent Markonni felt, coupled with the allegedly evasive action of Mr. Floyd, still do not add sufficiently to the profile characteristics to furnish probable cause for defendant Roseborough's arrest and search. The government argues that these additional factors corroborate the agent's suspicions that the defendant was carrying narcotics and form the basis for probable cause.

The Court is fully aware that information gathered through subsequent investigation from a valid identification stop can be added to suspicions previously formed to establish probable cause. See *United States v. Van Lewis, supra,* at 542. However, here, the officer's observations in patting down Roseborough do not suggest a sufficient basis for believing that the defendant was engaged in committing a crime. The government admits in its brief, p. 6, that the bulges which the agent felt were not in the shape of a weapon, and there is no testimony that they were in any other form from which the agent could infer the existence of contraband. Moreover, the furtive behavior of Mr. Floyd can hardly be used against Mr. Roseborough since at the time Mr. Floyd drove off, the officer merely suspected that they knew each other. In *Spinelli v. United States,*

393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Supreme Court was faced with a similar question whether information gathered through surveillance sufficiently corroborated the original basis for suspicion. Here, the original basis for suspicion was the profile characteristics; in *Spinelli,* it was a tip. The Court in *Spinelli* held that there is no probable cause where the results of the investigation contain "no suggestion of criminal conduct when taken by themselves—and they are not endowed with an aura of suspicion by virtue of the informer's tip," at 418, 89 S.Ct. at 590.

Accordingly, the Court holds that the arrest of defendant Roseborough was not based on probable cause. For this reason and for the reasons previously discussed regarding the legality of the initial stop and the scope of the initial search, the evidence in this case must be suppressed in that none of the exceptions to the warrant requirement are applicable.

Defendants' Motion to Suppress should be, and hereby is, granted. IT IS SO ORDERED.