UNITED STATES of America, Plaintiff,

v.

Trent L. CHAMBLIS, Defendant.

Crim. No. 75–82073.

United States District Court,
E. D. Michigan, S. D.

Jan. 27, 1977.

Victoria L. Toensing, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Gershwin A. Drain, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

■ This matter is before the Court on the defendant's motion to suppress evidence filed pursuant to Rule 41(f) of the Federal Rules of Criminal Procedure. The defendant, Trent L. Chamblis, has been charged with possession of approximately 28.82 grams of heroin in violation of 21 U.S.C. § 841(a)(1). An evidentiary hearing established the relevant facts.[1]

---

1. The facts were uncontested, as the defendant failed to appear at the evidentiary hearing. The defendant was deemed to have waived his right to be present at the suppression hearing by his voluntary absence. *United States v. Dalli*, 424 F.2d 45, 48 (CA2 1970); *United States v. Mendenhall*, No. 6–80208 (E.D.Mich., November 18, 1976).

On December 8, 1975, at about 4:30 P.M. at Detroit Metropolitan Airport, Special Agent Harold Wankel of the Drug Enforcement Administration was in the waiting area for American Airlines arrivals. He observed people disembarking from a nonstop flight from Los Angeles. About 15 people had disembarked when Agent Wankel observed the defendant, a young male, disembarking. The defendant appeared to the agent to be nervous—he was constantly looking around, and his movements were hurried. The agent had never seen the defendant before. The defendant proceeded to a phone booth and appeared to make a call. He then proceeded out of the airport in a hurried manner. The defendant claimed no baggage, but he was carrying a garment bag. The agent observed two or three hangers protruding from the garment bag. Special Agent Wankel, joined by Special Agent Jesse Back, followed the defendant. The defendant went outside at the upper level of the terminal and stood. There is no access to public transportation at the upper level.

Special Agent Wankel approached the defendant, identified himself, and asked the defendant for identification. The defendant produced a check stub and a Chrysler employee identification card. Special Agent Wankel asked to see his airline ticket, and the defendant stated that he had lost it. Special Agent Wankel then "requested" that the defendant accompany him downstairs to an office in order to further check on the defendant's identification, and the defendant indicated that he would accompany the agents. As they started downstairs, the defendant started to run. The agents gave chase, and they were joined by Special Agent Markonni and two Wayne County Deputy Sheriffs. As the defendant ran, Special Agents Wankel and Markonni saw the defendant throw something into the street. Special Agents Wankel and Back captured the defendant. Special Agent Markonni retrieved the object thrown by the defendant from a bystander, and it appeared to be heroin. The defendant was taken to the DEA office at the airport. A field test was performed on

the substance, and it was found to be heroin. The defendant was then advised of his rights and searched. More suspected heroin was found.

■ When the defendant was initially stopped by Special Agent Wankel, his freedom of movement was restrained, and he was "seized" within the meaning of the Fourth Amendment. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The fact that the initial detention was brief and fell short of an arrest does not make the Fourth Amendment inapplicable. It does, however, affect the standard to be applied in determining the propriety of the police conduct. Limited investigative stops can be based on facts that do not amount to probable cause for arrest. *United States v. Harflinger*, 436 F.2d 928 (CA8 1970), cert. denied 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971). Such stops must, however, be based on facts that amount to a reasonable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Harflinger*, supra. A number of judges in this district have stated that an agent can make an investigatory stop if he has a reasonable suspicion that a party disembarking from a plane is carrying a controlled substance. *United States v. Mendenhall*, No. 6–80208 (E.D. Mich., November 18, 1976); *United States v. Grayson*, No. 76–80580 (E.D.Mich., November 9, 1976); *United States v. Allen*, 421 F.Supp. 1372 (E.D.Mich.1976); *United States v. Floyd*, 418 F.Supp. 724 (E.D.Mich. 1976); *United States v. Rogers*, No. 6–80162 (E.D.Mich., July 15, 1976); *United States v. Van Lewis*, 409 F.Supp. 535 (E.D.Mich. 1976). The first issue before this Court is whether the initial stop of the defendant was based on a reasonable suspicion that the defendant was carrying a controlled substance.

■ Special Agent Wankel stated that the initial stop was based on the following factors: (1) The flight was from Los Angeles, a major drug supply center; (2) the defendant appeared to be nervous; (3) he

made a phone call; (4) he had little luggage; (5) he exited at the upper level, where there was no access to public transportation; and (6) the fact that no one appeared to be there to pick him up. The agent testified that he was using a drug courier profile that has been developed by the Drug Enforcement Administration. The profile consists of a number of factors that the agents who work at the airport have found to be common to drug couriers. The profile is discussed in detail in *United States v. Van Lewis*, supra. Special Agent Wankel testified that the defendant did meet the drug courier profile.

■ Judge Joiner held in *Van Lewis* that meeting the profile gives rise to a reasonable suspicion, which permits limited interrogation and identification stops. 409 F.Supp. at 544. Judge Keith in *United States v. Floyd*, supra, took a much more critical view of the use of the profile in making investigatory stops. 418 F.Supp. at 728. This Court is of the view that the fact that a suspect meets a number of factors present in the profile is not dispositive of the issue of the propriety of an investigative stop.

One problem with determining the propriety of the stop solely on the basis of whether or not the defendant met the profile is that the factors present in the profile seem to vary from case to case. Special Agent Wankel himself testified that the profile in a particular case consists of anything that arouses his suspicions. A look at the profile cases themselves tends to show that the factors present in the profile tend to change. For instance, in *United States v. Mendenhall*, supra, a special agent of the Drug Enforcement Administration testified that drug couriers deplane last in order to obtain a clear view of the area inside the terminal. No mention was made of this factor in the present case, possibly because the defendant was one of the first persons off the plane. Another problem with analyzing solely in terms of whether the suspect met the profile is that it tends to negate the need for ascertaining the number of incriminating factors and the degree to which each of them is in fact incriminating. There are profile cases in which a suspect might at least arguably meet the profile where there is no reasonable suspicion. *United States v. Grayson*, supra. There are other profile cases in which the government can point to ample indicia of reasonable suspicion. *United States v. Allen*, supra. The existence of a drug courier profile is not a talisman that obviates the need for traditional analysis. This case must be analyzed in terms of the law that has developed in the area of investigative stops.

■ The agent must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, supra, 392 U.S. at 21, 88 S.Ct. at 1880. The agent in this case articulated a number of specific facts, and they each tended to inculpate the defendant. The defendant makes much of the fact that his behavior was of an innocent character. The test, however, is not whether the conduct was consistent with innocent behavior, but rather whether it was reasonable for the agent, given all the circumstances, to suspect that the defendant was carrying a controlled substance. *United States v. Holland*, 510 F.2d 453, 455 (CA9 1973), cert. denied 422 U.S. 1010, 95 S.Ct. 2634, 45 L.Ed.2d 674 (1975). In determining the reasonableness of the agent's actions, the Court can consider his experience and training. *United States v. Brignoni-Ponce*, supra, 422 U.S. at 885, 95 S.Ct. 2574; *Terry v. Ohio*, supra, 392 U.S. at 30, 88 S.Ct. 1868. It is undisputed that Special Agent Wankel was an experienced agent and that much of his experience was garnered at the airport in identifying and stopping potential drug couriers. The Court can also consider the seriousness of the problem the agents are attempting to deal with in determining the reasonableness of the conduct. *United States v. Brignoni-Ponce*, 422 U.S. at 878–79, 95 S.Ct. 2574. There can be no question but that traffic in illicit drugs is a serious problem in this community. Finally, the Court can consider the nature of the intru-

sion itself. *United States v. Brignoni-Ponce*, 422 U.S. at 880, 95 S.Ct. 2574; *Terry v. Ohio*, 392 U.S. at 24, 88 S.Ct. 1868. It is significant that here the initial stop consisted of just that—a stop—and did not encompass a pat-down search. Weighing all of these factors, it is the Court's judgment that the agent did act properly in making the initial stop.[2]

■ The crucial issue is whether the agent acted properly in continuing the detention by "requesting" that the defendant accompany him downstairs to an office. At that point in time the agent did not have probable cause to believe that the defendant was carrying contraband. The government acknowledges that there was no probable cause when the defendant was initially stopped. Between the time he was initially stopped and the time he was "requested" to accompany the agent to the room, the only information obtained by the agent was that the defendant did have some identification and claimed to have lost his airline ticket. These additional facts were not enough to establish probable cause.[3] On the other hand, the agents did have probable cause when they apprehended the defendant after he fled. Flight and furtive actions provided ample indicia of probable cause. *Sibron v. New York*, 392 U.S. 40, 66, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

The judges of this district are not in agreement as to whether an agent must have probable cause before he can take a person from the public area of an airport to a private office. Judge Joiner in *Van Lewis* held that probable cause is not needed. 409 F.Supp. at 545. Judge Freeman held that it is. *United States v. Pruss,* No. 5–81244 (E.D.Mich., January 14, 1976), affirmed by order, 542 F.2d 1177 (CA6 1976). Both Judge Joiner and Judge Freeman analyzed the problem in terms of whether the taking of the person to a private office changes the character of the detention from a stop into an arrest.

■ The Supreme Court, without trying to draw a line between a stop and an arrest, has indicated that a valid stop can become illegal if its scope is unreasonably extended. The Supreme Court in *Terry* stated that an investigative stop must be "reasonably related in scope to the justification for (its) initiation." 392 U.S. at 29, 88 S.Ct. at 1884. The Supreme Court elaborated on this in *Brignoni-Ponce:*

> "These cases together establish that in appropriate circumstances the Fourth Amendment allows a properly limited 'search' or 'seizure' on facts that do not constitute probable cause to arrest or to search for contraband or evidence of crime. In both *Terry* and *Adams v. Williams* [407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612] the investigating officers had reasonable grounds to believe that the suspects were armed and that they might be dangerous. The limited searches and seizures in those cases were a valid method of protecting the public and preventing crime. In this case as well, because of the importance of the governmental interest at stake, the minimal intrusion of a brief stop, and the absence of practical alternatives for policing the border, we hold that when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion. As in *Terry*, the stop and inquiry must be 'reasonably related in scope to the justification for their initiation.' 392 U.S. at 29 [ 88 S.Ct. 1868, 20 L.Ed.2d 889]. The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, *but any further detention or search must be based on consent or probable cause.*" 422 U.S. at 881–82, 95 S.Ct. at 2580 (emphasis added).

---

2. Compare the facts here with the facts the Second Circuit found to be sufficient to justify a stop in *United States v. Magda*, 547 F.2d 756, 20 Cr.L. 2317 (CA2 1976).

3. Cf., *United States v. Prince*, 548 F.2d 164, No. 76–1344 (CA6 1/19/77), (held that there was probable cause when defendant was stopped and taken into office).

Here, the initial questioning was completed, there was a further detention, and, as stated before, it was not based on probable cause. Here, as in *Pruss,* the defendant was never told that he was free to leave or that he could refuse to cooperate with the agent's request. The defendant obviously didn't think he was free to leave, since immediately after "consenting" to the request, the defendant fled. There is no basis for finding that the defendant voluntarily consented to the further detention.

Judge Joiner in *Van Lewis* based his ruling on the fact that there are reasons for not interrogating suspects in the airport's public places—the safety of both parties, the ability to converse effectively, and the embarrassment to the person detained. But none of these reasons take away from the fact that the nature of the intrusion is significantly changed when an individual is taken from a public place to what is in effect a police office. The fact that the individual might later be released from that office if he can prove to the agents that he is not transporting drugs is not controlling. Any individual who is arrested can gain his release by establishing to the arresting officer's satisfaction that he is not guilty of the crime he is suspected of having committed. In addition to the nature of the intrusion being changed, the intrusion is also being extended in a temporal sense.

The government relies in part upon cases holding that a detention based on reasonable suspicion can be prolonged if the initial detention leads to the discovery of further incriminating information. *United States v. Solomon,* 528 F.2d 88 (CA9 1975); *United States v. Harris,* 528 F.2d 1327 (CA8 1975). In these cases, however, the facts garnered by the officers during the initial detention were enough to establish probable cause. That is not the case here.

■ The actions of the agent in "requesting" that the defendant accompany him to a private office was an unreasonable extension of the scope of the stop. *Terry v.*

*Ohio,* supra. It was a further detention and was not based on consent or probable cause. *United States v. Brignoni-Ponce,* supra. Illegal police conduct requires the suppression of all evidence that is seized as a result. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Manning v. Jarnigan,* 501 F.2d 408, 411 (CA6 1974).[4]

■ The government at the hearing on the motion asserted that the defendant did not have standing to object to the search because he abandoned the property that he now seeks to have suppressed. One has no standing to challenge the search of an area or thing he or she has abandoned. *Parman v. United States,* 130 U.S.App.D.C. 188, 399 F.2d 559 (1968). The abandonment must, however, be voluntary. *United States v. Colbert,* 474 F.2d 174 (CA5 1973). The abandonment here was not voluntary. Nor can the abandonment be the result of illegal police conduct. *United States v. Maryland,* 479 F.2d 566, 568 (CA5 1973). The abandonment here was the result of illegal police conduct. In addition, the automatic standing rule is applicable where the defendant is charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and/or seizure. *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). The government argues that the automatic standing rule is no longer good law. One district court decision states as much in dicta. *United States v. Cotham,* 363 F.Supp. 851 (W.D.Texas 1973). The overwhelming weight of authority is to the contrary. *United States v. Holmes,* 521 F.2d 859 (CA5 1975); *United States v. Boston,* 510 F.2d 35 (CA9 1974); *United States v. DeMarco,* 488 F.2d 828 (CA2 1973); *United States v. Chadwick,* 393 F.Supp. 763 (D.Mass.1973); *United States v. Lisk,* 383 F.Supp. 550 (E.D.Wis.1974). This Court will follow the latter authorities. For all these reasons, the defendant does have standing to bring this motion.

---

**4.** The airport situation is unique. If the agent does not seize the contraband before it leaves the airport, there is rarely a second chance to do so. Query: Under the circumstances does the suppression rule achieve its stated objective?

The motion to suppress the alleged heroin is granted. It will be so ordered.