UNITED STATES of America, Plaintiff,

v.

Debra Ann DEWBERRY and Princella Karen Armelin, Defendants.

Crim. No. 76–80161.

United States District Court,
E. D. Michigan, S. D.

Jan. 28, 1977.

Victoria L. Toensing, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Martin Gary Deutch, Southfield, Mich., for defendant Dewberry.

Daniel H. Moss, Detroit, Mich., for defendant Armelin.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

This matter is before the Court on the defendants' motion to suppress evidence filed pursuant to Rule 41(f) of the Federal Rules of Criminal Procedure. The defendants have been charged with possession of approximately 2,000 grams of heroin in violation of 21 U.S.C. § 841(a)(1). An evidentiary hearing established the relevant facts.

On January 30, 1976, at about 8:00 P.M. at Detroit Metropolitan Airport, Special Agent Paul Markonni of the Drug Enforcement Administration was, along with three other agents, in the waiting area for flight arrivals. He observed the defendants disembark from a flight arriving from Los Angeles. They were met by Michael Lee. Agent Markonni thought he remembered Mr. Lee as a drug trafficker from a prior narcotics case. The defendants and Mr. Lee walked in the direction of the baggage claim area, but they stopped before reaching it. Defendant Debra Dewberry gave Mr. Lee what appeared to be her ticket envelope. Agent Markonni observed Mr. Lee write something on the ticket envelope and then hand the ticket envelope to a third woman, Leesha Edwards, who had appeared in the area and who had not disembarked from the plane. Mr. Lee then went up an escalator, Ms. Edwards went to the baggage claim area, and the defendants walked out of the terminal. At that time Agent Markonni was told by Agent David Mihills that he had seen Mr. Lee write a name, a phone number, and an address on the ticket envelope and had heard him tell the three women that David would bring the car around. Agent Markonni told Agents Mihills and Anderson to follow the defendants.

Agents Mihills and Anderson observed the defendants exit the terminal. The agents then approached the defendants, identified themselves, and asked the defendants for identification. The defendants initially indicated that they had no identification. The agents asked defendant Dewberry for a driver's license, and she indicated that she did not have one. Agent Mihills saw a California driver's license in defendant Dewberry's purse, and the photo on the license appeared to be of her. Defendant Dewberry did produce a checkbook with her name on it. Agent Hills asked her for her airline ticket, and she indicated that she had just left it at a phone booth. The agent thought that this statement was untrue, since he had seen her hand her ticket to Mr. Lee. The agent then asked her whether she had any luggage, and she replied that she did not. The agent thought that this statement was untrue, since he knew that Ms. Edwards was claiming what appeared to be defendant Dewberry's luggage. The agent then asked her where she was going, and she replied that they were looking for a cab. The agent thought that this statement was untrue, since he had heard Mr. Lee indicate that David would be picking them up. At this point Agent Markonni arrived.

Agent Markonni had been observing Ms. Edwards. He had seen her pick up a suitcase from the conveyor belt in the baggage claim area. When he arrived outside, Agents Mihills and Anderson were talking to the defendants. Agent Anderson informed Agent Markonni of what had transpired. Agent Markonni "requested" that the defendants accompany the agents to a private office. Mr. Lee then approached and saw the defendants and the agents together. He turned around and walked away. He was approached by one of the agents and also was "requested" to come to the private office. The three were then taken to the private office.

Agent Markonni then went back to the baggage claim area. He observed that Ms. Edwards still had possession of one suitcase and appeared to be looking for another piece of luggage. Ms. Edwards then walked away with the suitcase. Agent Markonni approached Ms. Edwards, identified himself, and asked her what her name was. Ms. Edwards responded that her name was Leesha Edwards. Agent Markonni noticed that the ticket held by Ms.

Edwards had the name of D. Jones on it. Agent Markonni then "requested" that Ms. Edwards accompany him to the private office. Agent Markonni then accompanied Ms. Edwards to the office. With the defendants, Mr. Lee, and Ms. Edwards in the office, Agent Markonni asked each of them if the suitcase Ms. Edwards had claimed was theirs. They each denied ownership of the suitcase. All four were then arrested. The suitcase was searched, and the heroin was found.

When the defendants were initially stopped by Agents Mihills and Anderson, their freedom of movement was restrained, and they were "seized" within the meaning of the Fourth Amendment. *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The propriety of the stop depends on whether the initial stop of the defendants was based on a reasonable suspicion that the defendants were carrying a controlled substance. *United States v. Chamblis,* 425 F.Supp. 1330 (E.D.Mich.1977), and cases cited therein at pp. 2–3.

■ Special Agent Markonni stated that the initial stop was based on the following factors: (1) The flight was from Los Angeles, a major drug supply center; (2) the defendants were met by a person the agent believed to be a drug trafficker; (3) the actions of the defendants, Mr. Lee, and Ms. Edwards in arranging for the pickup of the suitcase; and (4) the fact that it appeared that the defendants and Mr. Lee were going to leave without Ms. Edwards, since they had given Ms. Edwards an address and phone number. The question of whether these factors establish a reasonable suspicion is in this case not a difficult one. At the hearing counsel for defendant Dewberry acknowledged that the government had established a reasonable suspicion. The agents in this case were experienced, and they articulated a number of specific facts, each of which tended to inculpate the defendant. The latter two factors are especially damaging. They clearly indicated an attempt to put as much distance as possible between the defendants and the suitcase in

question. It is the Court's judgment that the agents did act properly in making the initial stop.

■ The next issue is whether the agents acted properly in taking the defendants from the public area of the airport to a private office. This Court in *Chamblis,* supra, held that such a change in the character of the detention must be based on consent or probable cause. Here, as in *Chamblis,* there is no basis for finding that the defendants voluntarily consented to the further detention. However, here, unlike the situation in *Chamblis,* the initial stop turned up enough additional information to establish probable cause. During the initial stop the agents asked defendant Dewberry four questions, and they were reasonable in concluding that each of her responses was a lie. These responses when added to the factors already within the knowledge of the agents were more than enough to lead a prudent person to believe that the defendants were bringing in narcotics to the airport. The further detention was based on probable cause and was therefore proper.

■ After the defendants were taken to the private office, they were formally placed under arrest, and the suitcase was searched incident to the arrests. The arrests were valid, since there was probable cause to make them. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The search of the suitcase was incident to the arrests. *United States v. Kaye,* 492 F.2d 744 (C.A.6, 1974); *United States v. Griffin,* 413 F.Supp. 178 (E.D.Mich.1976), and cases cited therein at 181. A warrantless search incident to a valid arrest is permissible. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

The motion to suppress the alleged heroin is denied. It will be so ordered.