UNITED STATES of America,
Plaintiff,

v.

Robert Beecham SCOTT, Defendant.

No. 75–81661.

United States District Court,
E. D. Michigan, S. D.

Jan. 21, 1976.

Robert D. Sharp, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Marvin Q. Horwitz, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Robert Beecham Scott is under indictment for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He brought this motion to suppress evidence obtained as the result of a search conducted on September 29, 1975 by an airport security guard as defendant was preparing to board a commercial airline.

As established at an evidentiary hearing before this court, defendant had been under surveillance by agents of the Drug Enforcement Administration (DEA) since June of 1975. Defendant was recognized by Agent Markonni of the DEA on September 29, 1975 as defendant stood at the American Airlines ticket counter at the Detroit Metropolitan Airport. Markonni proceeded to alert security guard John Reyes, who was operating an x-ray scanner at the entrance to the American Airlines concourse, that defendant would shortly be passing through the check point. Markonni advised Reyes that defendant had been seen with large sums of money and requested Reyes to be particularly observant if Reyes should have a legal reason to hand search defendant's luggage.

When defendant approached the check point, his attache case was passed through the x-ray scanner. The case contained a clipboard with a metal clasp, a small transparent packet containing cocaine, and a larger packet of cocaine concealed within a brown paper bag. (There is a dispute between the parties as to whether the attache case also contained a number of keys; the court finds it unnecessary to resolve this dispute because the presence or absence of the keys plays no role in this decision.)

■ In the presence of counsel for both sides, the court conducted a view of this x-ray device at the airport, using the attache case in question with contents similar to those it contained on September 29, 1975. The metal clasp on the clipboard appeared on the x-ray screen as a black, oblong object. The court finds that Reyes had reason to suspect that this might be a weapon or explosive device (its shape approximated that of a knife or a pen-gun), and that he therefore had a legal basis to conduct a hand search of defendant's attache case for a possible "concealed deadly or dangerous weapon, which is, or would be, accessible to such person in flight". 49 U.S.C. § 1472(*l*)(1).

■ In the course of this search for weapons, Reyes observed the small transparent packet containing white powder. He alerted Markonni of this fact and the arrest of the defendant ensued. The court finds that this information from Reyes constituted probable cause for Markonni to believe that defendant was committing a felony in his presence and that the arrest was therefore proper. *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ("When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed.") The court does not understand the defendant to contest the validity of this arrest or of the conduct of the DEA agents subsequent thereto, assuming that the initial search of the attache case by Reyes was proper. Nor does defendant contend that the general procedure of conducting airline security checks is unconstitutional. *See United States v. Dalpiaz,* 494 F.2d 374 (6th Cir. 1974), and cases cited therein; *see generally* Annot., *Validity, Under Federal Constitution, of Preflight Procedures Used at Airports to Prevent Hijacking of Aircraft,* 14 A.L.R.Fed. 286 (1973). As narrowed on oral argument, the sole issue for decision is whether the prior suggestion by Markonni so tainted Reyes' subsequent exercise of judgment in deciding to conduct the hand search as to render the search unreasonable in violation of the fourth amendment.

■ The court is aware that law enforcement agencies have made substantial use of the fruits of airport security checks for prosecuting crimes unrelated to the safety of airline passengers. *See, e. g.,* Note, *The Constitutionality of Airport Searches,* 72 Mich.L.Rev. 128, 129 n. 6 (1973) ("fewer than 20 per cent of the arrests resulting from airport searches have involved crimes related to hijacking"). In view of the limited purpose, namely, flight safety, that is relied upon to justify the warrantless intrusion into the privacy of air travelers, the courts must be vigilant in protecting against the abuse of the procedure for collateral

investigations. To be sure, the court does not believe it necessary to adopt an exclusionary rule precluding all use of evidence of other crimes. *See United States v. Skipwith,* 482 F.2d 1272, 1280 (5th Cir. 1973) (Aldrich, J., dissenting) ("viable use . . . should not be made of proceeds towards which the search was not, and could not have been independently, directed"). There is much to be said, however, for the proposition that "[a]ny indication of an exploitation of the airport occasion for other than flight safety purposes would warrant inquiry and the suppression of evidence that could with any degree of confidence be attributed to that kind of conduct". *United States v. Mitchell,* 352 F.Supp. 38, 43 (E.D.N.Y.1972), *aff'd mem.,* 486 F.2d 1397 (2d Cir. 1973). The court specifically disapproves of the conduct of Agent Markonni in this case in giving advance warning to the security guard. However well-motivated, such special attention to a particular passenger must inevitably have an influence upon the judgment of the person conducting the security check. While airport security officers may quite properly notify federal agents of suspected contraband observed in plain view in the course of routine security searches, the decision to conduct a hand search of a passenger's luggage in the first instance should be the product of the security officer's independent judgment.

The court declines, however, to fashion a *per se* rule vitiating all security searches conducted subsequent to warnings by officers investigating collateral crimes. Rather, the court must look to all the circumstances to determine whether there was an independent and adequate basis for the security search in its own right.

■ In the present case, the court's own view of the x-ray picture available to Reyes at the time of the search leads to the conclusion that defendant's attache case was properly subject to a security search. The court therefore holds that the advance warning did not so taint the security search as to render it constitutionally infirm. Defendant's motion to suppress is denied.

An appropriate order may be submitted.