**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles S. EHLEBRACHT,
Defendant-Appellant.**

**No. 80–7938.**

United States Court of Appeals,
Fifth Circuit.*
· Unit B

June 10, 1982.

As Corrected Dec. 16, 1982.

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

John E. McKay, Kansas City, Mo., for defendant-appellant.

Janis Caplan, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

ON PETITION FOR REHEARING and
PETITION FOR REHEARING
EN BANC

Before GODBOLD, Chief Judge, TJOFLAT and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

The panel has reconsidered its decision and opinion in this case. No member of this panel nor judge of this administrative unit in regular active service having requested that the court be polled on rehearing en banc (Rule 35, Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 16; Fifth Circuit Judicial Council Resolution of January 14, 1981), the suggestion for rehearing en banc is DENIED.

In his petition for rehearing, petitioner urges that we did not properly consider the evidence in light of our opinion in *United States v. Berry,* 670 F.2d 583 (5th Cir.1982) (en banc). Petitioner argues that *Berry* emphasizes our concern is greater when police ask individuals to accompany them to an office and then claims that under the facts Ehlebracht would not have believed that he was not free to accompany Markonni to the Delta office. However, in his petition for rehearing as in his initial brief, Ehlebracht misconstrues the evidence. Ehlebracht argues that Agent Markonni directed him to an enclosed Delta office, but the evidence indicates the contrary.[1] He also makes the argument that Markonni took

1. [Markonni]

I then said, "Do you have any identification, Mr. Scott?" And he brought his suitcase that he was carrying, he brought his suitcase up and put his other hand under it, and then walked a little bit, three or four steps to a wheelchair that was sitting next to this large information complex in the middle of the rotunda. And I asked him, I said, "Are you going to have to open your suitcase to get your identification?" And he said, "Yes."

And I said, "Would you prefer to do this some other place since you will have to open your suitcase? Do you prefer to do this privately so all the people won't see what's going on?" He said, "Yes."

I said, "We can use the office that's right across the rotunda," and pointed out to the same Delta Airlines office that I made the telephone call from.

At that time Mr. Ehlebracht closed the zipper on his suitcase again, and we walked over to the office.

(T. 36–37).

possession of his airline ticket and retained it, again contrary to the evidence.[2] As stated in our initial opinion, Ehlebracht was a sophisticated middle-aged businessman whose actions in accompanying Markonni to the Delta office and showing his identification were clearly voluntary. After thorough reconsideration, we adhere to our judgment of affirmance, but we VACATE our prior opinion and substitute the following in its stead.

## CORRECTED OPINION

Charles Ehlebracht appeals his conviction for possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841. The appellant's challenges are to the denial of his motion to suppress, the sufficiency of the evidence on intention to distribute, certain jury instructions, and improper comment of government counsel. The case involves an airport search and seizure and this is the principal issue in the case. We affirm his conviction.

After an evidentiary hearing, the magistrate recommended denial of the motion to suppress on the grounds that the Drug Enforcement agent had probable cause to arrest Ehlebracht for the offense and that the ensuing search was incident to a lawful arrest. The district court denied the motion and found that Ehlebracht was not "actually" seized for fourth amendment purposes until he was formally placed under arrest and that probable cause existed at that time. Alternatively, the district court held that the arrest was lawful because the defendant violated Ga.Code Ann. § 26–2506 in furnishing a false identification to the investigating officer. Thus, the court found that the search was proper under either theory of the legality of the arrest.

The thrust of appellant's contention for reversal is that he was "seized" illegally at an earlier point in time and that all following steps in the process were thus tainted. Our task is to again walk through the labyrinth of police/citizen contact, investigatory stop, and arrest.

On April 17, 1980, Delta Flight 1048 arrived in Atlanta from Miami at approximately 8:45 a.m. Special Agent Paul Markonni of the Drug Enforcement Administration and Detective James Burkhalter of the Atlanta Police met the plane. Both Markonni[3] and Burkhalter[4] are experi-

---

**2.** Q All right. Agent Markonni, going back for a moment, sir, who had custody of Mr. Ehlebracht's airline ticket and bag at the time that yourself and the defendant walked from the Delta waiting area, basically, into the Delta Airlines office?

A Mr. Ehlebracht.

Q Had you given him his airline ticket back after examining it?

A Most definitely.

(T. 44).

**3.** Special Agent Markonni has been a federal officer for approximately fifteen years. Twelve of those years he has been with the Drug Enforcement Administration or its predecessor agencies, while from 1970–73 he was with the Secret Service. He is presently Senior Agent at the Atlanta airport. He has been in Atlanta since 1977; prior to that time he developed the drug courier profile while assigned to the Detroit airport. Indeed, the exploits of Special Agent Markonni are nearly legendary in this circuit. See, e.g., United States v. Thomas, 676 F.2d 531 (11th Cir.1982); United States v. Berry, 670 F.2d 583 (5th Cir.1982); United States v. Sanford, 658 F.2d 342 (5th Cir.1981); United States v. Setzer, 654 F.2d 354 (5th Cir.1981); United States v. Williams, 647 F.2d 588 (5th Cir.1981); United States v. Elsoffer, 644 F.2d 357 (5th Cir.1981); United States v. Herbst, 641 F.2d 1161 (5th Cir.1981); United States v. Berd, 634 F.2d 979 (5th Cir.1981); United States v. Turner, 628 F.2d 461 (5th Cir.1980); United States v. Hill, 626 F.2d 429 (5th Cir.1980); United States v. Robinson, 625 F.2d 1211 (5th Cir.1980); United States v. Williams, 622 F.2d 830 (5th Cir.1980); United States v. Canady, 615 F.2d 694 (5th Cir.1980); United States v. Roundtree, 596 F.2d 672 (5th Cir.1979); and United States v. Elmore, 595 F.2d 1036 (5th Cir.), cert. denied, 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980). Agent Markonni has also turned up in cases arising outside our jurisdiction. See, e.g., United States v. Jefferson, 650 F.2d 854 (6th Cir.1981); United States v. Andrews, 600 F.2d 563 (6th Cir.), cert. denied, 444 U.S. 878, 100 S.Ct. 166, 62 L.Ed.2d 108 (1979); United States v. Wright, 577 F.2d 378 (6th Cir.1978); United States v. Lewis, 556 F.2d 385 (6th Cir.1977); United States v. McCaleb, 552 F.2d 717 (6th Cir.1977); United States v. Hunter, 550 F.2d 1066 (6th Cir.1977); United States v. Prince, 548 F.2d 164 (6th Cir.1977); United States v. Perry, 478 F.2d 1276 (7th Cir. 1973); United States v. Pratter, 465 F.2d 227 (7th Cir.1972); United States v. One 1979 Cadillac Seville, 477 F.Supp. 879 (E.D.Mich.1978); United States v. McClain, 452 F.Supp. 195

enced law enforcement officers. The Miami area is the premier source of cocaine distribution in the United States, which causes the Drug Enforcement Administration to pay particular attention to flights from that city.

Charles Ehlebracht was one of the passengers on that flight. After deplaning he asked the Delta agent where he could make his connection to Kansas City. Markonni testified that Ehlebracht attracted his attention because of an unusual protrusion under the appellant's left trouser leg and because he was carrying only one small suitcase. Markonni followed the appellant and testified that there was a definite difference in the way the left and right trouser legs moved. It appeared to Markonni that something was stuffed into the top of the appellant's boot. Markonni testified that on numerous occasions he had found drug couriers carrying narcotics in boots or taped to their legs.

When Ehlebracht arrived at the gate to check in for Delta Flight 565 to Kansas City, Markonni noticed that there were no claim checks for additional luggage attached to Ehlebracht's ticket jacket. Markonni inspected the ticket coupon given to the Delta agent. It was issued to a James Scott. "James Scott's" reservation indicated that he left Kansas City at 9:00 p.m. on April 16, 1980 and arrived in Miami the next morning at 2:30 a.m. His return flight had called for him to leave Miami at 7 a.m. Thus, he had spent a total of 4 hours and 30 minutes in Miami after having spent 4½ hours getting there. Markonni testified that many times drug couriers made quick turnaround trips to their sources of supply. The ticket had been paid for in cash. Markonni then checked out the callback number that the appellant had given; no one at that number had heard of a "James Scott." This was described as also being characteristic of drug couriers.

Markonni then approached the appellant who was seated in the crowded gate area. He identified himself as a police officer and inquired whether the appellant would mind speaking with him. According to Markonni's testimony, the appellant agreed and, without being asked, walked outside the waiting area. Out in the rotunda, the agent exhibited his credentials and asked Ehlebracht to produce his airline ticket. The defendant was also asked his name and it was given as James Scott. Markonni then asked for additional identification. The defendant had brought his suitcase with him. At that point he walked over to a nearby wheelchair and prepared to open the case. Markonni asked Ehlebracht if he would prefer to open his suitcase in a more private area and the defendant indicated that that would be preferable. Ehlebracht was directed to a nearby airline office. He carried his own suitcase and ticket into that area.

Once inside the office, the appellant opened his suitcase and produced a Missouri driver's license issued to Charles Ehlebracht. He then informed Markonni that this was his true identity. Agent Markonni then told Ehlebracht that he was looking for drugs passing through the airport and inquired whether Ehlebracht was carrying any. He also asked if the appellant would consent to a search of his person and his suitcase. Ehlebracht stated that he was not carrying any drugs but that he would agree to be searched. Markonni then told him that he had the right to refuse to allow a search and to consult with an attorney be-

(E.D.Mich.1977); *United States v. Coleman,* 450 F.Supp. 433 (E.D.Mich.1978); *United States v. Dewberry,* 425 F.Supp. 1336 (E.D. Mich.1977); *United States v. Chamblis,* 425 F.Supp. 1330 (E.D.Mich.1977); *United States v. Miles,* 425 F.Supp. 1256 (E.D.Mich.1977); *United States v. Allen,* 421 F.Supp. 1372 (E.D.Mich. 1976); *United States v. Floyd,* 418 F.Supp. 724 (E.D.Mich.1976); *United States v. Griffin,* 413 F.Supp. 178 (E.D.Mich.1976); and *United*

*States v. Scott,* 406 F.Supp. 443 (E.D.Mich. 1976).

4. Detective Burkhalter has also figured in several cases. *See, e.g., United States v. Thomas,* 676 F.2d 531 (11th Cir.1982); *United States v. Sanford,* 658 F.2d 342 (5th Cir.1981); *United States v. Smith,* 649 F.2d 305 (5th Cir.1981); *United States v. Herbst,* 641 F.2d 1161 (5th Cir.1981); and *United States v. Tolbert,* 517 F.Supp. 1081 (E.D.Mich.1981).

fore making this decision. Markonni then asked if the appellant still consented to the search. Ehlebracht replied "under those conditions, no."

Markonni placed Ehlebracht under arrest for a violation of Ga.Code Ann. § 26–2506 which makes it a misdemeanor to give a false name to a police officer.[5] He searched the appellant and discovered a clear plastic envelope in his boot which was filled with cocaine. Later, a device was found on Ehlebracht's person which was used to snort cocaine and which contained a few grams of the drug.[6]

We turn to appellant's claim that his motion to suppress should have been granted. The appellant claims that he was illegally "seized" within the meaning of the fourth amendment from the time that Markonni first approached him in the waiting area. Ehlebracht testified that the first verbal contact with Markonni in the waiting room was from behind his head. He testified that Markonni identified himself and showed his badge and that he felt he was under arrest and had no choice but to answer the demands of authority. He said that Markonni's demeanor was not friendly and that his tone of voice was demanding and very determined. Assuming without deciding that Ehlebracht was "seized" at this point, we hold that the "seizure" was supported by reasonable suspicion. At the time the alleged "seizure" took place, Markonni had already established that (1) there was a suspicious bulge in the suspect's boot, (2) the suspect was traveling from Miami, a major drug distribution center, (3) the suspect had spent only four and a half hours in Miami after a very long trip (and was in the city only from 2:30 a.m. to 7 a.m.), (4) the suspect had paid for his ticket in cash, and (5) the suspect had given an inaccurate callback number to the airline. These factors gave Markonni reasonable suspicion to conduct an investigatory stop and to further interrogate Ehlebracht. *Cf. United States v. Berry,* 670 F.2d 583, 603 (5th Cir. 1982) (en banc) (use of alias, travel by known smuggler, travel from Miami, nervousness, and use of public transportation combined to give reasonable suspicion for investigatory stop).

We are now faced with the issue of whether Ehlebracht validly consented to go

---

5. Ga.Code Ann. § 26–2506 states as follows:
   A person who gives a false name or address to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer is guilty of a misdemeanor.
   Agent Markonni has been a Fulton County deputy sheriff for about three years. Detective Burkhalter is an Atlanta police officer. Therefore, the statute was applicable to them.

6. Ehlebracht presented a very different version of the facts. Under *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we are compelled to view the facts in the light most favorable to the government and we have done so. Nevertheless, we will recount briefly Ehlebracht's story.
   Ehlebracht claims that while sitting in the waiting area for his connecting flight to Kansas City, a page was made for James Scott. Ehlebracht went to the Delta desk to answer the page and found Markonni waiting for him. Markonni leaned forward, identified himself as a police officer, and "very firmly" informed Ehlebracht that he wanted to speak with him. He showed the appellant his police identification and suggested that they move away from the desk. Markonni then asked the appellant if he was James Scott and asked to see his ticket. Markonni kept the ticket and demanded further identification. Ehlebracht then opened his suitcase, found his wallet, and produced a Missouri driver's license while still in the concourse. When Markonni saw the name on the license, he asked Ehlebracht why he had lied to him. Ehlebracht testified "I told him that I had been going with a female in Kansas City for seven years, and that I had a very close relationship with her. I had been visiting another lady friend of mine in Florida and had been up all night, and was just returning to Kansas City and had purchased the ticket under the name of James Scott in order to visit this particular individual on a private basis and not have it on a Visa, Mastercharge card, or any knowledge of anyone knowing that I had visited another city."
   Ehlebracht asserts that Markonni then inquired as to whether he was carrying drugs and whether he would consent to a search. Ehlebracht did not consent and at some point wound up inside the Delta office. He again refused to consent to a search and was placed under arrest by Markonni. The cocaine was then found during the search. Ehlebracht claims that during this entire period that Markonni held on to his ticket.

with Markonni to the Delta office or whether Ehlebracht was effectively under arrest while still in the rotunda. Again, we turn to *Berry* for guidance.

In *Berry,* after the interrogation had taken place, Berry knew that Markonni was aware he had lied about his identity and about his traveling alone. Markonni then asked Berry and his companion whether they were carrying drugs; Berry replied in the negative. Markonni then requested the suspects to accompany him to a Drug Enforcement Administration office and Berry agreed. *United States v. Berry, supra,* 670 F.2d at 588–89. This court held that the consent was not voluntary.

We find the facts of this case to be sufficiently dissimilar to justify the opposite result. In *Berry* at the time of the alleged consent to travel to the Drug Enforcement Administration office, it was clear to the suspects that they were not free to refuse to comply with Markonni's request. In another case where a trip to an airline office was held to be tantamount to arrest, *United States v. Hill,* 626 F.2d 429 (5th Cir.1980), the suspect repeatedly refused to consent to a search and was ordered to accompany Markonni to a Delta office.

The instant case is not analogous to *Berry* or *Hill.* Ehlebracht, even under the exceptionally close scrutiny mandated by *United States v. Berry, supra,* 670 F.2d at 598, 602, gave voluntary consent to travel to the Delta office. There is no indication of coercion; Ehlebracht was free to refuse to accompany Markonni to the office.

There is no indication that Markonni attempted to intimidate Ehlebracht into accompanying him to the Delta office. When Ehlebracht began to open his suitcase in order to produce identification, Markonni simply inquired as to whether he would prefer to open his suitcase in private. Ehlebracht is a middle-aged businessman, who later that morning declined to give his consent to be searched. This indicates that he understood that he had the right to refuse to cooperate with Markonni.

Further, in *Berry* the request to accompany Markonni to the Drug Enforcement Administration office was clearly a command. In the instant case, he had suggested merely that Ehlebracht might prefer to open the suitcase in private. Additionally, under these circumstances, we find that Markonni's possession of the airline ticket when Ehlebracht agreed to Markonni's suggestion had no significant coercive effect on Ehlebracht's decision.

■ Since Ehlebracht voluntarily accompanied Markonni to the Delta office, Ehlebracht was not under arrest at that point. However, when Ehlebracht produced his true identification, which indicated that he had lied to Markonni regarding his identity, Markonni knew that a misdemeanor in violation of the Georgia statute had been committed in his presence. Thus, Markonni could properly arrest Ehlebracht. Traditionally, a police officer need not obtain an arrest warrant when a misdemeanor is committed in his presence. *See, e.g., John Bad Elk v. United States,* 177 U.S. 529, 535, 20 S.Ct. 729, 731, 44 L.Ed. 874 (1900). We agree with the district court that at this point in time facts sufficient to show probable cause had been established and the arrest was valid for this reason as well as for violation of the Georgia statute. Since a valid arrest had taken place, a search incident to arrest was permissible. The drugs were found pursuant to this search, and therefore they were admissible against him.

Ehlebracht claims that the evidence was insufficient to convict him of possession of cocaine with intent to distribute. He contends that the drugs were for his own personal use. In support of this contention, he maintains that he is a cocaine addict and that the four ounces of cocaine found on his person would supply him for a few months at best. We, however, reject this contention.

■ The standard for reviewing sufficiency of the evidence claims in the Fifth Circuit Unit B was recently changed in *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), overruling long-established precedent (*see, e.g., United States v. Nickerson,* 669 F.2d 1016, 1021 (5th Cir.

1982)).[7] The new standard of review in the Fifth Circuit Unit B is whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell, supra,* at 549. Under this standard, Ehlebracht's claims must fail.

■ The government presented evidence which showed that the cocaine in Ehlebracht's possession was 63% pure, much higher than the 10–15% pure cocaine normally sold on the street in Kansas City. This cocaine had a wholesale value of $20,-000 in Kansas City and a street retail value there of over $44,000. It could be purchased in Miami for less than $8,000. Evidence was presented that the four ounces of cocaine would last a "mere user" approximately 448 days. Testimony was also presented from experienced Drug Enforcement Administration agents that they had never heard of a mere user traveling from Kansas City to Miami to purchase such a large amount of cocaine. These agents also testified to the overwhelming odds against a drug user from Kansas City being able to make contact with a cocaine wholesaler in Miami. Under these circumstances, the evidence was sufficient for conviction.

■ The appellant also contends that the trial judge gave erroneous jury instructions. Though presented in a stream-of-consciousness fashion, we glean the following basic contentions from his brief. First, he claims the judge below erred by informing the jury that there were only three possible verdicts. Second, he alleges that the charges had no factual basis, lessened the burden of proof for the prosecution, and were not balanced. Lastly, the appellant claims that the lower court informed the jury of the range of penalties, an action that Ehlebracht argues mandates a new trial.

We reject all of these contentions. First, the contention that the trial judge failed to instruct the jury on all possible verdicts is without merit. The following is the complained of instruction:

Now, the form of your verdict, there are three types of verdict, and only three types of verdict, that are possible in this particular case. The first one is the verdict of guilty of possession with intent to distribute cocaine as alleged in the indictment. The next one, next possible verdict, is guilty of the possession of cocaine, and the third one is not guilty.

Record, vol. III at 615–16. Ehlebracht claims that this instruction precluded the possibility of the jury finding him not guilty of possession with intent to distribute. We do not read the instruction that way. Further, the trial judge clarified this instruction by informing the jury that if they found Ehlebracht not guilty that they were to write on the verdict form that "the defendant is not guilty of the crime charged in the indictment." Record, vol. III at 616. The following day the trial judge recharged the jury:

It is possible that you may find the defendant guilty or not guilty of possession of cocaine with intent to distribute as charged in the indictment. It is possible that you might find the defendant guilty or not guilty of possession of cocaine. Thirdly, it is possible that you may find the defendant not guilty of either.

Record, vol. III at 661–62. We can find no fault with the above instruction. Thus, we conclude that the trial judge in no way impermissibly limited the possible verdicts.

The appellant contends that the trial court gave jury instructions which were unbalanced, confused the jury, and lessened the government's burden of proof. The appellant excerpts portions of the charges to the jury in his brief, but these do not present the whole story of what transpired below. In this circuit, jury instructions are

---

7. The *Nickerson* test is:

When reviewing the sufficiency of the evidence supporting a criminal conviction, the standard of review is whether, viewing the evidence in the light most favorable to the government, the jury could conclude that the evidence is inconsistent with every reasonable hypothesis of innocence.
669 F.2d at 1021.

viewed as a whole and not in a piecemeal fashion. *United States v. Nickerson,* 669 F.2d 1016, 1021 (5th Cir.1982); *United States v. Sanfilippo,* 581 F.2d 1152 (5th Cir. 1978); *United States v. Evans,* 572 F.2d 455 (5th Cir.1978). We have reviewed the jury instructions as a whole and find them to be quite proper.

The appellant also alleges that the trial court informed the jury of the range of penalties. Specifically, he alleges the use of the terms "simple possession" and "lesser included offense" by the trial court highlighted the possible range of penalties. We reject this argument. The trial court used the term "simple possession" to distinguish the lesser included offense from the felony of possession with intent to distribute. In no way did these references state the possible penalties that could be imposed. Likewise, we reject the appellant's assertion that the judge improperly instructed the jury as to the order in which each crime is considered. Given that Ehlebracht was charged with possession with intent to distribute in the indictment, the lesser included offense of simple possession could only be considered by the jury if they found that Ehlebracht lacked the intent to distribute. Therefore, the trial court properly instructed the jury on this matter.

Lastly, Ehlebracht claims that the prosecutor committed reversible error by telling the alternate jurors the felony-misdemeanor distinction. This occurred, after the alternates had been excused, in a courthouse elevator. The appellant claims that all twelve jurors were in the elevator at the time and that the alternates later had conversations with some of the remaining jurors.

Upon a review of the record, we find no evidence to support the appellant's claims. When the prosecutor told the alternates of the felony-misdemeanor distinction, the jury was beginning its deliberations. Hence, the jurors were not present in the elevator when the conversation occurred. Further, at the appellant's request, the judge questioned the jury on subsequent conversations they had with the alternates.

None spoke with the dismissed alternates regarding anything to do with the case. Hence, there is no merit to the appellant's argument.

We have considered and have rejected all of the appellant's arguments. We therefore affirm his conviction.

AFFIRMED.