UNITED STATES of America,
Plaintiff-Appellee,

v.

Walter COTTON, Defendant-Appellant.

No. 82–7392.

United States Court of Appeals,
Eleventh Circuit.

Dec. 16, 1983.

Certiorari Denied March 19, 1984.
See 84 S.Ct. 1614.

O. William Adams, III, P.C., Birmingham, Ala., for defendant-appellant.

Frank Donaldson, U.S. Atty., Frank Salter, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before HILL and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

Walter Cotton appeals to this court from his conviction in the district court for the transportation of stolen motor vehicles in violation of 18 U.S.C. § 2312 (1976). Cotton requests that this court overturn his conviction because he was unconstitutionally arrested, because the district judge allowed evidence obtained in violation of the Fourth Amendment to be admitted at trial, and because the prosecutor allegedly exercised his peremptory challenges to exclude blacks from the jury. We find no constitutional violation and affirm the decision of the district court.

On August 24, 1981, Cecil Rhodes, the police chief of Eutaw, Alabama, observed two vehicles passing him on highway 37 as he left a greyhound racing track in Eutaw. The first vehicle, a 1974 GMC one-ton truck, had a temporary paper license. The GMC truck was carrying an engine block with transmission and a Chevrolet Camaro without a tag. Rhodes observed no markings or manufacturer's emblems on the GMC truck or the car. Following closely behind the GMC truck was a Chevrolet El Camino carrying luggage and a moped. Rhodes could not see the passengers in the vehicles; however, he was familiar with the El Camino and knew it belonged to the Cotton family.

Although Rhodes observed no violations of the law by either vehicle, his suspicions were aroused. He had received information from an informant, Edward Davis, that Walter Cotton was planning to transport stolen vehicles into the state. The identifying emblems had been removed from the GMC truck and the Camaro, and he found it strange that an old truck would have a temporary tag. (Also, temporary tags are not used in Alabama.) Moreover, he knew that a warrant was outstanding for Walter Cotton's arrest.

Acting on his suspicions, he proceeded to follow the vehicles and called ahead on his radio for another officer to stop the vehicles and check them out. Vernie Stripling, the assistant chief, stopped the GMC truck, and Rhodes continued on to the station. Apparently the driver of the El Camino stopped voluntarily. The truck was being driven by Thomas Foster, with Cotton riding in the passenger seat. Stripling approached the driver's side of the truck and, opening the door, asked for Foster's license. Cotton then came around the truck and cursed Stripling. Stripling noticed that the vehicle identification number (VIN) was missing from the door and, having observed a violation of state law, arrested Cotton and Foster.

While Stripling checked Foster's license and arrested Foster and Cotton, Catherine Price, the driver of the El Camino, progressed slowly down the road and stopped in a parking lot. She asked Officer Tommy Clyde Dew, who had been called to the scene, what was happening. He replied that he did not know. He asked Price to follow him to the police station and she did so. Price and the car's passenger were not arrested when they arrived at the station although Price was later arrested for possession of marijuana.

The police brought Foster and Cotton to the station. After examining the vehicles, the police found that all VIN numbers on the GMC truck, the Camaro, and the moped had been removed, altered, or obliterated. The motor and transmission had been reported stolen from the Ohio area.

I

Cotton argues that the Fourth Amendment prohibits the action of the officers of the Eutaw police department in stopping the GMC truck and the El Camino. We disagree. We conclude that the information available to Rhodes was sufficient to justify an investigative stop on the basis of reasonable suspicion either that criminal activity was in progress or that Cotton was in one of the vehicles. *See Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). We

note before analyzing the events in the present case that reasonable suspicion should be determined from the totality of the circumstances and that the " 'collective knowledge' " of all the officers involved in the stop should be examined. *United States v. Kreimes,* 649 F.2d 1185 (5th Cir. 1981).

The circumstances of Rhodes' observation of the two vehicles on the highway when combined with his knowledge that a warrant existed for Cotton's arrest, that the El Camino belonged to the Cottons, and that a confidential informant had stated that Cotton would be bringing stolen cars into the state clearly establishes reasonable suspicion sufficient to justify the stop. Rhodes' knowledge that the El Camino belonged to the Cottons and his observation that the vehicles were traveling together supplies a basis for stopping the vehicles to determine whether Cotton was present. In addition, Rhodes noted that the identifying emblems had been removed from the GMC truck and the Camaro. When combined with the informant's tip, this constitutes added grounds for the stop. *See Adams,* 407 U.S. at 147, 92 S.Ct. at 1923 (officer relying on tip by informant). Cotton's contention that the tip failed to meet the standards set forth in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), is inappropriate because we do not deal here with a probable cause to arrest situation.

## II

■ Any problems in determining whether probable cause supported Cotton's arrest are resolved by Stripling's observation that the VIN number was missing from the GMC truck. Having observed a violation of state law, Stripling clearly was permitted to arrest Cotton and Foster. *See United States v. Ehlebracht,* 693 F.2d 333, 338 (5th Cir.1982). Cotton argues that the officer had no basis for opening the door to the car and that, if he had not done so, he would not have observed the lack of a VIN. In *Pennsylvania v. Mims,* 434 U.S. 106, 98 S.Ct.

330, 54 L.Ed.2d 331 (1977), the Supreme Court held it permissible for an officer stopping a car for a traffic violation to require the driver to step out of the car. The Court noted the danger inherent in such a situation and reasoned that the officer could employ reasonable means to protect himself. *Id.* at 110, 98 S.Ct. at 333. We can see no constitutional distinction between that case and this one.[1] By opening the door, Stripling ensured that Foster was not concealing a weapon under the window opening. No constitutional violation occurred when, after properly opening the door, Stripling noticed that the truck lacked a VIN. *See United States v. Duckett,* 583 F.2d 1309, 1313 (5th Cir.1978) (plain view doctrine).

## III

■ Cotton next contends, although he does not crisply present the argument, that the police had no justification for inspecting the Camaro, the engine, and the moped in order to examine their VIN's. We find no merit in this argument. In this situation, determining the VIN was not a search or, if it was, it was reasonable and no warrant was required. *United States v. Williams,* 434 F.2d 681, 683–84 (5th Cir.1970), *cert. denied,* 401 U.S. 1011, 91 S.Ct. 1262, 28 L.Ed.2d 547 (1971); *United States v. Johnson,* 431 F.2d 441 (5th Cir.1970) (en banc).

## IV

■ Cotton next contends that he was denied a fair trial when the prosecutor exercised his peremptory challenges to strike four blacks from the jury. In an attempt to establish systematic exclusion of blacks by the prosecutor, Cotton cites *United States v. Brooks,* 670 F.2d 148, 151 (11th Cir.), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1339 (1982), in which the defendant challenged the actions of the same prosecutor on the same basis. As we noted in that case, the defendant "bears a heavy burden when he seeks to show systematic discrimination of constitutionally

---

1. The possibility of danger presented itself during the stop in question. The record shows that Cotton emerged from the passenger seat and shouted obscenities at Stripling.

significant proportions." *Id.; see also Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Simply noting that the actions of this prosecutor have previously been challenged does not suffice; we therefore find no validity in Cotton's argument.

The judgment of the district court is AFFIRMED.