UNITED STATES of America,
Plaintiff-Appellee,

v.

Bruce Christian BROWN and James
Patrick Manikowski,
Defendants-Appellants.

No. 82–8522.

United States Court of Appeals,
Eleventh Circuit.

May 10, 1984.

Stanley M. Baum, Atlanta, Ga. (Court Appointed), for Brown.

Vernon Pitts, Federal Defender Project, Inc., Atlanta, Ga., for Manikowski.

James W. Kesler, Atlanta, Ga., for plaintiff-appellee.

Before VANCE and CLARK, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

---

* Honorable Luther M. Swygert, U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

SWYGERT, Senior Circuit Judge:

This is an appeal by the defendants James Manikowski and Bruce Brown from their convictions, under 21 U.S.C. § 841(a)(1) (1976) and 18 U.S.C. § 2 (1976), of aiding and abetting each other to possess with intent to distribute a controlled substance. On January 27, 1981, the defendants were accosted by James Burkhalter, an Atlanta police detective, and Paul Markonni, a Drug Enforcement Administration agent, at Hartsfield International Airport in Atlanta, Georgia. In the course of the ensuing search (partly consensual and partly nonconsensual) of the defendants' persons and carry-on baggage a quantity of cocaine was discovered; and a search of their checked baggage revealed two revolvers. The cocaine and revolvers were used against them at trial, following their unsuccessful motions to suppress. Because we find that the motion to suppress the cocaine was improperly denied, we reverse their convictions.

## I

The facts leading up to the searches may be stated briefly. On the morning of January 27 Brown and Manikowski arrived on a flight from West Palm Beach, Florida, and were observed by Burkhalter and Markonni as they inquired about a connecting flight to Los Angeles and obtained boarding passes for the flight. After noticing the defendants looking at them, Burkhalter and Markonni asked the ticket agent to call up the defendants' computerized reservation record, and learned that the tickets had been issued in the names Campbell and DelRay shortly before the flight was scheduled to leave West Palm Beach, and had been paid for in cash. When the defendants continued looking at them the officers approached them, identified themselves as law enforcement officers, and asked to speak with them. The defendants consent-

ed and on request showed the officers their tickets and identified themselves as Campbell and DelRay. They told the officers they had no other identification, and allowed the officers to inspect their carry-on bags; the bags contained a hotel receipt bearing the names Monrose and Manikowski, whom the defendants identified as friends they had vacationed with in Florida, and other pieces of paper bearing the name DelRay. The defendants also consented to a search of their checked baggage, about which the officers inquired after seeing baggage claim checks stapled to an airline ticket envelope, but explained that it could not be produced because it had been checked through to Los Angeles. Brown consented to a search of his person, but Manikowski refused, and also refused to produce a wallet that the officers thought they detected in his back pocket. Thereupon Markonni forcibly escorted Manikowski from the departure gate where the encounter began to a jetway 100 yards away, seized the wallet, and conducted a pat-down search. The wallet contained identification bearing the name James Manikowski, and the search revealed three packets of cocaine strapped to Manikowski's legs. After the seizure of the wallet Markonni announced that Manikowski was under arrest for falsely identifying himself to a law enforcement officer.

Subsequently DEA officials in Los Angeles, who had been contacted by Markonni, retrieved the defendants' checked bags and subjected them to a dog-sniff test. Because the dog reacted positively, the bags were sent under seal to Atlanta, where a search warrant was obtained. When the bags were opened they were found to contain two revolvers, but no drugs.[1]

Brown and Manikowski were each indicted on charges of aiding and abetting the other to possess cocaine with intent to distribute it. Before trial each moved to sup-

---

**1.** The Supreme Court has assumed that dog-sniff tests are highly reliable. *United States v. Place,* — U.S. —, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983); *see also Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 1328 n. 10, 75 L.Ed.2d 229 (1983). The result of the test in this case should perhaps give us pause before making that assumption.

press the cocaine and revolvers on the ground that the evidence had been obtained in violation of the fourth amendment. Specifically, they argued that the officers lacked reasonable suspicion to detain them at the beginning, thus tainting the subsequent discoveries; lacked probable cause to search Manikowski without his consent; and violated Fed.R.Crim.P. 41(a) by transporting the checked baggage from Los Angeles into the jurisdiction where the warrant was obtained. The magistrate to whom the pretrial motions were referred recommended that they be denied, reasoning that the officers' initial encounter with the defendants implicated no fourth amendment concerns; that the nonconsensual search of Manikowski was justifiable as a search incident to a lawful arrest, because the officers had probable cause to believe Manikowski had violated a Georgia statute making it unlawful to identify oneself falsely to a law enforcement officer (although the magistrate rejected the government's alternative argument that the officers had probable cause to believe Manikowski possessed drugs); that Brown lacked standing to challenge the search of Manikowski; and that the warrant to search the baggage was lawful. The district judge adopted the magistrate's recommendations, and allowed the evidence to be admitted at trial; both defendants were convicted of the crimes charged.

## II

■ It cannot be disputed that the two officers initially had no reasonable and articulable suspicion that the defendants were involved in illegal activity. The facts that caught their attention—that the defendants came from West Palm Beach, which the officers identified as "source city" for the distribution of narcotics, had paid for their tickets in cash, and looked at the officers—are insufficient to justify an investigatory stop (a *"Terry"* stop, see *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) short of an arrest. See *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (per curiam). But it is established that not ev-

ery "stop" is a detention requiring the modest fourth amendment protection of "reasonable suspicion" prescribed by *Terry*. In particular, the Supreme Court has held that police officers may "approach[ ] an individual on the street or in another public place, ... ask[ ] him if he is willing to answer some questions, [and] put[ ] questions to him if the person is willing to listen" without implicating the fourth amendment. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (plurality opinion); see also *Reid v. Georgia*, 448 U.S. at 440 n. *, 100 S.Ct. 2752, 2753 n. *, 65 L.Ed.2d 890; *Terry v. Ohio*, 392 U.S. at 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889. It is generally agreed that such an encounter is not covered by the fourth amendment unless "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.); see also *United States v. Berry*, 670 F.2d 583, 593–95 (5th Cir. Unit B 1982) (en banc).

■ We need not decide, however, whether at the outset of their encounter with the officers Brown and Manikowski would reasonably have felt they were not free to leave, tainting the evidence discovered subsequently, for we conclude that the search of Manikowski and the seizure of the cocaine were improper in any case. If the initial encounter was lawful, any evidence voluntarily produced or discovered in the course of the encounter by a consensual search would be admissible. *Royer*, 103 S.Ct. at 1326. But Manikowski did not consent; rather, upon his refusal he was forcibly taken to a less public area and searched against his will. Absent consent, such a search ordinarily would violate the fourth amendment. *Id.* at 1326–28.

■ The government urges, however, that because there was probable cause to arrest Manikowski the search was a lawful incident to arrest. Cf. *id.* at 1329. We do not linger over the government's argument, rejected below but renewed in its

brief, that probable cause to believe Manikowski was carrying drugs existed before he was escorted to the jetway, for at oral argument the government conceded that such probable cause was lacking. Instead, the government relies on the argument accepted below, that Agent Markonni had probable cause to believe Manikowski had violated Georgia law by falsely identifying himself.[2] The magistrate reasoned that the combination of Manikowski's nervousness, his denial of having any identification, his refusal to produce a wallet, and the difference between the names on the tickets and those on the papers in the baggage gave Markonni probable cause to believe the defendants had given false names. But general nervousness is slender evidence of specific lies, especially because being stopped and questioned by police officers could be alarming even to the innocent; and the names in the baggage were not identified with the defendants and thus did not contradict the names on the tickets, unlike *Ehlebracht,* 693 F.2d at 336–37; *Berry,* 670 F.2d at 588–89, 604; and *Pulvano,* 629 F.2d at 1153, 1155, in which arrests under the Georgia false-identification law were based on the production of actually conflicting identifications and on acknowledged falsity on the part of the defendants. Here, by contrast, the defendants simply refused to produce identification other than the airline tickets. If the Georgia statute were construed to require, not only truthful identification, but proof of truthfulness on demand, it would be unconstitutional. See *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 1859–60, 75 L.Ed.2d 903

(1983). We therefore must interpret the statute to prohibit only actual lies in order to avoid an unconstitutional construction. The defendants' refusal to furnish identification—which they were entitled to do if indeed this was a *Terry* stop, as the government must contend—may have created suspicion that they had actually used false names, but falls far short of probable cause. Of course, when Manikowski's wallet was seized and was found to contain identification conflicting with his ticket, probable cause was established; but this occurred only after the seizure and therefore cannot be used to justify it. Contrast *Rawlings v. Kentucky,* 448 U.S. 98, 111 & n. 6, 100 S.Ct. 2556, 2564 & n. 6, 65 L.Ed.2d 633 (1980) (noting that search was valid because of probable cause to arrest, and emphasizing that "[t]he fruits of the search ... were ... not necessary to support probable cause to arrest"). We conclude that the search of Manikowski violated the fourth amendment, and the fruits of the search were not admissible against him.

### III

■ Whether the evidence seized as a result of the illegal search of Manikowski may nevertheless be used against Brown is more difficult. Although it may seem anomalous if the evidence is inadmissible against Manikowski, who actually carried the cocaine, but admissible against Brown, who did not, it is established that fourth amendment rights are personal, and therefore cannot be asserted vicariously. See, e.g., *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 967, 22 L.Ed.2d 176

---

**2.** *See* Ga.Code § 26–2506:

> A person who gives a false name or address to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identity is guilty of a misdemeanor.

In their pretrial motions the defendants sought to exclude the evidence discovered as a result of the purported arrest under this statute, on the ground that Agent Markonni was not a local peace officer entitled to enforce the statute. The magistrate acknowledged that federal officers are not law enforcement or peace officers for state statutory purposes, relying on *United States v. Carter,* 523 F.2d 476, 478 (8th Cir.1975),

and *United States v. Chapman,* 420 F.2d 925, 926 (5th Cir.1969), but sua sponte took judicial notice, based on other cases in this circuit, see *United States v. Ehlebracht,* 693 F.2d 333, 337 & n. 5 (5th Cir. Unit B 1982); *United States v. Pulvano,* 629 F.2d 1151, 1155 (5th Cir.1980), that Agent Markonni had been deputized as a local officer. The defendants objected, seeking a hearing on the factual issue whether the deputization extended to Clayton County, the location of the new airport, in addition to Fulton County, where Markonni had formerly worked. We need not resolve this dispute because of our disposition of the other claims.

(1969). The government argues that Brown lacks standing to challenge the constitutionality of the search and seizure because he was not the subject of the search. Treating the question as one of standing, an approach the Supreme Court once employed, see *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), invites the conclusion that one cannot challenge the legality of a search directed at another. The notion of "standing" to invoke the fourth amendment, implying that "targets" of searches are entitled to challenge the searches' constitutionality, was rejected by the Court, see *Rakas v. Illinois*, 439 U.S. 128, 132–38, 99 S.Ct. 421, 424–27, 58 L.Ed.2d 387 (1978), however, in favor of the concept that fourth amendment rights are personal, see *id.* at 138–40, 99 S.Ct. at 427–28; the proper question is whether one's own rights have been violated, a question of substantive fourth amendment law rather than one of procedure. As the Court has made clear, that question turns on whether one has a "legitimate expectation of privacy" in the place searched. *Rawlings*, 448 U.S. at 104–06, 100 S.Ct. at 2561–62; *United States v. Salvucci*, 448 U.S. 83, 91–92, 100 S.Ct. 2547, 2553, 65 L.Ed.2d 619 (1980); *Rakas*, 439 U.S. at 143, 99 S.Ct. at 430; see also *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967).

■ It is therefore necessary to determine whether Brown had a legitimate expectation of privacy in Manikowski's person in order to answer whether he may seek to exclude the evidence seized from Manikowski. The Supreme Court has characterized that issue as one of fact. *Rawlings*, 448 U.S. at 104–06, 100 S.Ct. at 2561–62; *Salvucci*, 448 U.S. at 92, 95, 100 S.Ct. at 2553, 2554. Because the district court below made no findings on this issue, ordinarily the proper course would be to remand. Cf. *Salvucci*, 448 U.S. at 95, 100 S.Ct. at 2554. We believe the circumstances of this case and the nature of the crime charged make it unnecessary to remand the case for further findings, however. At one time the Supreme Court held that a defendant charged with a possessory crime "automatically" could challenge the seizure of the object he was accused of possessing, on the grounds that otherwise defendants would be faced with the choice of claiming possession as a foundation for their suppression motions and risking use of that testimony at trial should their motions fail, or forgoing their fourth amendment challenges; and that the government would be placed in the position of arguing inconsistently that the defendant did not have possession for suppression purposes but did have possession for substantive purposes. *Jones*, 362 U.S. at 261–64, 80 S.Ct. at 731–34. Although the Court has since repudiated the "automatic standing" rule (because a defendant's testimony in support of a motion to suppress cannot be used as substantive evidence at trial, see *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), and because "possession" for substantive criminal law purposes is not necessarily a proxy for the kind of interest shielded from search or seizure by the fourth amendment), see *Salvucci*, 448 U.S. 89–91, 100 S.Ct. 2551–2552, it has held that ownership of the object seized is a factor to be considered in determining whether the defendant had a reasonable expectation of privacy that was invaded by the search or seizure, *Rawlings*, 448 U.S. at 105, 100 S.Ct. at 2561; *Salvucci*, 448 U.S. at 91–92, 100 S.Ct. at 2552–2553; *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Rakas*, 439 U.S. at 142 n. 11, 143 n. 12, 99 S.Ct. at 430 n. 11 & n. 12. Ownership of the object would carry little or no weight if the defendant put the object in plain view, see *Rawlings*, 448 U.S. at 106, 100 S.Ct. at 2562, or put it in a place out of view but from which he could not reasonably expect to exclude others, as in *Rawlings*, *id.* at 104–05, 100 S.Ct. at 2561 (nonconsensual stowing of drugs in purse to which others had free access and in which defendant had no subjective expectation of privacy). But the present case is not of this type. Here, the essence of the charge against Brown is that he and Manikowski acted jointly in possessing the

drugs, which happened to be concealed on Manikowski's person. The packets of cocaine strapped to Manikowski's legs were neither in plain view nor in a place to which others had free access. If Brown in fact complotted with Manikowski to conceal the cocaine in so private a place, as he is charged with doing, that fact itself establishes a reasonable expectation of privacy. Like the defendant in *Katz*, 389 U.S. at 351–52, 88 S.Ct. at 511, who by closing the telephone booth door could reasonably expect his conversations to be private unless his interlocutor revealed them, Brown could expect the cocaine to remain private unless Manikowski consented to reveal it. Cf. *United States v. Perez*, 700 F.2d 1232, 1236 (8th Cir.1983). The reasonableness of the expectation of privacy, established in other cases by the extent of the defendant's enjoyment of and dominion over the place searched, see *United States v. Torres*, 705 F.2d 1287, 1294–95 (11th Cir.) (per curiam), *vacated but en banc consideration withdrawn pending remand to the panel*, 718 F.2d 998 (11th Cir.1983) (en banc) (per curiam); *United States v. Haydel*, 649 F.2d 1152, 1154–55 (5th Cir. Unit A 1981), *modified*, 664 F.2d 84 (5th Cir.) *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982), is established in this case by the nature of the place itself. Consensual access to another's body as a place of concealment is so unlikely to be casual, unlike access to a car or house, that a more particularized examination of the defendant's dominion and efforts to guarantee privacy, of the kind undertaken in cases involving cars or houses, would not be helpful. Because under the government's necessary theory of the case the bailment of the drugs was consensual, unlike *Rawlings*, and the place of concealment was patently private, we believe remanding for further factfinding on the reasonableness of Brown's expectation of privacy is unnecessary. Brown's own fourth amendment interest in the privacy of the objects and place he and Manikowski jointly sought to keep private was violated, for the reasons stated in Part II above.

## IV

Because these fourth amendment violations alone require reversal of the defendants' convictions we need not address whether the seizure of the revolvers in their checked baggage was improper, either as a fruit of these antecedent violations or because the baggage was imported by the government into the jurisdiction where the search warrant was obtained. The judgment of conviction is REVERSED.

VANCE, Circuit Judge, dissenting:

I agree with the district court that the officers had probable cause to believe that Manikowski had falsely identified himself in violation of the Georgia statute. It follows that the ensuing arrest and search of Manikowski were legal.

When approached in the Atlanta airport, Manikowski and Brown informed the officers that their names were Campbell and DelRay, the false names under which they were traveling. Although they were enroute from West Palm Beach, Florida to Los Angeles, California they claimed not to have any identification whatever. Manikowski consented to examination of papers taken from his tote-bag including a hotel receipt that showed his real name. He appeared very nervous with his hands trembling and his breathing rapid. He had paid for his ticket in cash but claimed that he did not have a wallet. He was clearly lying because the shape of his wallet was apparent in his right rear pocket.

Manikowski did not refuse to produce identification. If he had the case would be different. He falsely claimed to be unable to produce identification. To my mind the facts clearly provided the officers with probable cause as found.

I also disagree most strenuously with the majority's innovative analysis concerning the violation of Brown's fourth amendment rights. The authorities cited by the majority simply cannot, I submit, be read to support Brown's claimed expectation of privacy in Manikowski's person.

I would affirm the convictions.